## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

BREAION KING
    **Plaintiff,**

-vs-              **CAUSE NO.:**
                **A-16-CA-1020-SS**

THE CITY OF AUSTIN, TEXAS, and
OFFICER BRYAN RICHTER,
    **Defendants.**

---

## O R D E R

BE IT REMEMBERED on this day the Court reviewed the file in the above-styled cause, and specifically Defendant Bryan Richter (Officer Richter)'s Motion to Exclude the Expert Testimony of Kevin Cokley [#36] and Plaintiff Breaion King's Response [#41] in opposition; Officer Richter's Motion for Summary Judgment and Supplement [#37, #38] and Plaintiff's Response and Supplement [#41, #45] in opposition; and the City of Austin (the City)'s Motion for Summary Judgment [#39], Plaintiff's Response [#44] in opposition, and the City's Reply [#46] thereto. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders.

### Background

As stated in a prior order, this case arises out of Plaintiff's allegations she was subjected to excessive use of force and racial discrimination by Officer Richter of the Austin Police Department (APD) in the course of a routine traffic stop. Plaintiff claims Officer Richter and the City are liable to her under 42 U.S.C. § 1983 for violating her constitutional rights and under 42 U.S.C. § 1981 for violating her federal rights. Am. Comp. [#12] at 10.

The facts recounted here are drawn from the summary judgment record, which includes video recordings of the traffic stop at issue and Officer Richter's prior uses of force. On summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, but the Court "assign[s] greater weight, even at the summary judgment stage, to the facts evident from video recordings taken at the scene." *Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011).

## I.     Officer Richter's History

After completing APD's training academy, Officer Richter became a full-time APD officer on April 22, 2010. City's Mot. Summ. J. [#39-2] Ex. B (Manley Aff.) ¶ 12. As of December 2013, Officer Richter's supervisors perceived Officer Richter had a higher than normal rate of using force, receiving complaints, and conducting pursuits. Resp. City's Mot. Summ. J. [#44-6] Ex. F (Richter's Internal Affairs File) at 13–14. In response, one supervisor conducted an analysis of Officer Richter's use of force but concluded Officer Richter's rate of using force was in line with that of five of his peer officers who worked in the same area. *Id.* The same supervisor noted he had counseled Officer Richter several times on his tactical decision-making to avoid getting into hands-on situations. *Id.*

To support her claims against the City, Plaintiff points to three incidents where Officer Richter used force that occurred prior to the traffic stop underlying this case. A brief overview of these incidents as captured on video provides context for this opinion.[1]

In the most recent incident, on June 30, 2013, Officer Richter pulled over a male motorist and a female passenger for failing to turn on their headlights. *See* Resp. City's Mot. Summ. J. [#44-10] Ex. J (June 30, 2013 Incident Video) at 1:30–18:25. Officer Richter asked the motorist

---

[1] The exact racial identity of individuals against whom Officer Richter previously used force is unspecified and unclear from the videos.

to step out of the vehicle, frisked him, and then asked the motorist questions regarding his alcohol consumption. *Id.* Officer Richter then asked the motorist to perform a field sobriety test. *Id.* During the sobriety test, the motorist requested a lawyer and refused to continue. *Id.* The motorist began shouting at Officer Richter, and Officer Richter reached for him. *Id.* The motorist withdrew his arm from Officer Richter's grasp and Officer Richter responded by wrapping his arm around the motorist's neck and flipping both the motorist and himself to the ground. *Id.* Another officer ran out from a patrol vehicle to assist and the female passenger also exited her vehicle, videotaping the struggle with her cell phone. *Id.* Officer Richter commanded her to return to the vehicle, and while she was doing so, Officer Richter ran after her. *Id.* Officer Richter grabbed the female passenger by her arms, swept her legs out from under her, and dropped her to the pavement.[2] *Id.* The APD supervisor who reviewed the incident concluded Officer Richter's use of force was "within APD policy[;] there is a training opportunity that may be addressed, but the response can be termed objectively reasonable!" Resp. City's Mot. Summ. J. [#44-13] Ex. M (Prior Incident Reports) at 2.

A little less than a year earlier, on August 19, 2012, Officer Richter responded to a call regarding individuals who had been fighting via his patrol vehicle. Resp. City's Mot. Summ. J. [#44-11] Ex. K (August 19, 2012 Incident Video) at 8:40–9:30. Once he arrived in the area, Officer Richter exited his vehicle and approached four individuals who were walking down the sidewalk. Officer Richter began handcuffing one of the individuals while a fellow officer arrested another. *Id.* Officer Richter then grabbed the individual he was arresting and threw him to the ground. *Id.* The video shows no indication the individual was resisting arrest. *Id.* An APD

---

[2] Although it is unclear from the video footage, it appears Officer Richter may have spanked the female passenger before sweeping her feet out from under her. June 30, 2013 Incident Video at 17:53–57.

supervisor reviewed the incident and concluded Officer Richter's use of force was "objectively reasonable and within policy." Prior Incident Reports at 6.

Officer Richter was involved in another use of force incident on November 19, 2011. Resp. City's Mot. Summ. J. [#44-12] Ex. L (November 19, 2011 Incident) at 3:15–6:10. There, Officer Richter arrived on scene to support a fellow officer who had pulled over a motorist. *Id.* Without saying anything, the other officer and Officer Richter approached the vehicle, opened the vehicle's door, and grabbed the motorist. *Id.* Officer Richter told the motorist if he did not get out of the vehicle immediately, he would be tazed. *Id.* A third officer joined and the three officers pulled the motorist out of his vehicle and onto the ground. *Id.* Officer Richter tazed the motorist at least twice for failing to comply with orders to put his hands behind his back. *Id.* During both tazings, the motorist lay on the ground. *Id.* The APD supervisor who "read the report and supplement . . . found the force used to be objectively reasonable and within policy[.]" Prior Incident Reports at 7.

Officer Richter did not receive any supplementary training or discipline concerning his use of force before the traffic stop underlying this case. Resp. City's Mot. Summ. J. [#44-3] Ex. C (Richter Dep.) at 54:13–57:19.

## II.     The Traffic Stop

Plaintiff is a black woman who weighs approximately 120 pounds and is about five feet, five inches tall. On June 15, 2015, between 12:30 and 1:30 p.m., Plaintiff was driving north on I-35. It is undisputed Plaintiff was exceeding the speed limit by approximately fifteen miles per hour. Richter's Mot. Summ. J. [#37-5] Ex. D (King Dep.) at 16:22–24. Plaintiff observed Officer Richter's patrol car approach with his overhead lights engaged. *See id.* at 16:25–17:22. Plaintiff claims she initially assumed Officer Richter was pursuing another vehicle, but pulled into a

4

Wendy's parking lot when she realized he was pursuing her vehicle. *Id.* Plaintiff parked and exited her vehicle at least in part in an effort to get out of the ticket. *Id.*

As Plaintiff was walking toward the restaurant, Officer Richter's patrol car pulled into the parking lot. Richter's Mot. Summ. J. [#37-2] Ex. A (Richter Dash Camera Video) at 1:21–24. Officer Richter excited his patrol car and directed Plaintiff three times to return to her vehicle. *Id.* at 1:30–40. Plaintiff eventually did so, returning to a seated position in her car with the driver's door open and her legs outside the car. *Id.* at 1:40–50. Officer Plaintiff then asked Plaintiff for her driver's license. *Id.* at 1:49–51. Plaintiff asked, "But I'm already stopped so technically can you stop me?" *Id.* at 1:59–2:04. In response, Officer Richter stated "Ma'am, you were about to go inside without a wallet, so I know you're only coming here because you know I was coming to pull you over." *Id.* at 2:05–09. Officer Richter continued, "I can absolutely stop you if you're already parked . . . . Take a seat back in your car please and close the door." *Id.* at 2:10–17. Officer Richter requested Plaintiff "put [her] feet back in the car so [he] could close the door." *Id.* at 2:18–20. Plaintiff asked Officer Richter, "Can you please hurry up?" *Id.* at 2:20–22.

What happened next is unclear from Officer Richter's dash cam video. *Id.* at 2:22–33. The video shows Officer Richter reached into the Plaintiff's vehicle. *Id.* Audio from the video includes Plaintiff screaming "don't touch me" and "oh my God." *Id.* Officer Richter simultaneously shouted at Plaintiff to "stop resisting." *Id.* Officer Richter ordered Plaintiff to get out of the car and Plaintiff said "I'm getting out. Let me get out. Do not touch me." *Id.* at 2:33–38. Officer Richter again ordered Plaintiff to "get out of the car now" and the video shows Officer Richter hauled Plaintiff from her vehicle. *Id.* at 2:38–40. He swung Plaintiff's body around in the air so her legs collided with a truck two parking spaces over and subsequently

slammed her to the ground. *Id.* at 2:40–2:44. Plaintiff landed facing the ground with one arm pinned underneath her body and the other arm in Officer Richter's grip. *Id.*

Officer Richter then got on top of Plaintiff, pressing his elbow into her neck, and ordered her to put her hands behind her back. *Id.* at 2:44–2:48. The video shows the two individuals locked in a struggle. *Id.* at 2:48–3:00. Plaintiff claims she attempted to comply with Officer Richter's commands while still protecting herself from being smashed into the pavement. Resp. Richter's Mot. Summ. J. [#43] at 4. Officer Richter claims Plaintiff was resisting being handcuffed. Richter's Mot. Summ. J. [#37] at 3–4. At one point in the video, both Plaintiff and Officer Richter stood up and Officer Richter had Plaintiff's arms secured behind her back. Richter Dash Camera Video at 3:00–04. Officer Richter then attempted an unsuccessful leg sweep in an effort to drop Plaintiff back to the ground. *Id.* Next, he lifted Plaintiff up and slammed her back on to the ground, but Plaintiff was able to break her fall with one leg to some degree. *Id.* at 3:04–09. Plaintiff claims Officer Richter put her in a chokehold, but Officer Richter claims no chokehold was used. The two struggled until Officer Richter forced Plaintiff to lie flat on the ground and fastened handcuffs around Plaintiff's wrists. *Id.* at 3:09–48.

Once Plaintiff was securely handcuffed, Officer Richter lifted Plaintiff from the ground by her handcuffed arms. *Id.* at 3:48–52. With Plaintiff's arms stretched backwards behind her head, Officer Richter steered Plaintiff to his patrol car and into the backseat. *Id.* at 3:52–4:20. Less than one minute passed between Officer Richter's first words to Plaintiff and Officer Richter's initial use of force. *Id.* at 1:30–2:22.

As Officer Richter propelled Plaintiff to his patrol car, other APD officers arrived. Officer Richter told his fellow officers Plaintiff attempted to throw a "haymaker" at him and she

had said "no" when he asked her to put her legs in her vehicle. *Id.* Resp. Richter's Mot. Summ. J. [#43] Ex. I. (Breckenridge Dash Camera Video) at 1:55–2:09; 9:47–56.

## II.    Subsequent Events

Plaintiff was placed in Officer Spradlin's patrol car for transport to the police station. During the ride, Plaintiff and Officer Spradlin had the following conversation, which was recorded on video:

> **Officer Spradlin**: Well let me ask you this. Why are so many people afraid of black people?
>
> **Plaintiff:** That's what I wanna figure out! Because I'm not a bad black person.
>
> **Officer Spradlin**: I can give you a really good . . . a really good idea of why it might be that way.
>
> **Plaintiff**: Why?
>
> **Officer Spradlin**: Violent tendencies. And I want you to . . . I want you to think about that. I'm not saying anything. . . I'm not saying it's true. I'm not saying I can prove it or nothing. But 99% of the time when you hear about stuff like that, it's the black community that's being violent. That's why a lot of the white people are afraid, and I don't blame them. There are some guys I look at . . . I, yeah . . . I know it's my job to deal with them and I know it's probably going to go ugly. . . But that's the way it goes. But yeah, some of them, because of their appearance or whatnot, some of them are very intimidating.

Resp. Richter's Mot. Summ. J. [#43-8] Ex. H (Spradlin Seat Camera Video) at 49:16–50:11.

Plaintiff was charged with resisting arrest, but the charge was later dismissed. Resp. Richter's Mot. Summ. J. [#43] at 6. Plaintiff was issued a speeding ticket, which she paid. King Dep. at 17:8–10.

Officer Richter's supervising sergeant, lieutenant, and commander reviewed his use of force on Plaintiff and determined he did not violate APD's policy on use of force. City's Mot.

Summ. J. [#39-2] Ex. B (Manley Aff.) ¶ 22. Officer Richter was not disciplined but he was issued a "Conduct Counseling Memo," which addressed needed corrective measures including an impartial attitude and courtesy. *Id.*

On July 19, 2016, when then Chief of Police Acevedo learned of the incident between Plaintiff and Officer Richter, an APD Internal Affairs Division investigation was opened. *Id.* ¶ 23. Five months later, on December 6, 2016, the investigation concluded. *Id.* Based on the investigations findings, Chief Acevedo concluded Officer Richter violated APD policy concerning use of force. *Id.* However, Chief Acevedo found a written reprimand was the maximum penalty he could impose because Texas law prohibits a department head from suspending an officer later than the 180th day after the department learns of the alleged violation (180-Day Rule). *Id.*; TEX. LOCAL GOV'T CODE § 143.117. Chief Acevedo therefore issued Officer Richter a written reprimand. *Id.*

In commenting on Officer Richter's use of force to APD commanders, Chief Acevedo stated if Plaintiff had been "a pretty white girl in her Sunday best dress . . . I don't think Richter would have responded that way." Resp. City's Mot. Summ. J. [#44-4] Ex. D-1 (Acevedo Radio Interview) at 10.

## III.    Procedural History

This case was filed on August 30, 2016. The Court granted the City's initial motion to dismiss Plaintiff's complaint for failure to plead sufficient factual allegations to state a claim for relief but granted Plaintiff leave to file an amended complaint. Plaintiff did so, and the Court found Plaintiff's amended complaint adequate to allow a reasonable inference of liability and allowed the case to proceed.

Following a period of discovery, Officer Richter now moves to exclude the testimony of Kevin Cokley, a purported expert in psychology and African American studies. Additionally, Officer Richter and the City independently move for summary judgment. These motions are ripe for decision.

## Analysis

### I.    Motion to Exclude Expert Testimony

Officer Richter moved to exclude the testimony of Kevin Cokley under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). Mot. Exclude [#36]. However, this Court finds it difficult to decide *Daubert* objections to expert witnesses outside of the trial context. For this reason, it is the Court's practice to consider *Daubert* objections to a witness during the trial. All trials on this docket are "on the clock," with limited time to present the evidence. When a *Daubert* objection is lodged during trial, the Court will recess the jury, listen to the testimony, and make a ruling consistent with the evidence being presented. If the *Daubert* objection is sustained, the time necessary to hear the witness's testimony outside the presence of the jury will be subtracted from the presenter of the witness. If the *Daubert* objection is overruled, the time consumed by listening to the witness outside the presence of the jury will be deducted from the objector. Therefore, the Court dismisses Officer Richter's motion to exclude the expert testimony of Kevin Cokley without prejudice to re-urging at trial.

### II.    Motions for Summary Judgment

### A.    Legal Standard

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254–55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*

"Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

**B.    Application**

The Court first evaluates Officer Richter's summary judgment motion and then turns to the City's.

### 1.    Officer Richter's Summary Judgment Motion

Under 42 U.S.C. § 1983, Plaintiff contends Officer Richter used excessive force in violation of the Fourth Amendment and impermissibly discriminated against her on the basis of her race in violation of the Fourteenth Amendment. Plaintiff further asserts Officer Richter violated her rights under 42 U.S.C. § 1981 by discriminating against her on the basis of race. Moving for summary judgment, Officer Richter argues he is entitled to qualified immunity on Plaintiff's excessive force claim.[3] Officer Richter also claims he cannot be held liable for violating Plaintiff's rights under § 1981 because that statute only applies where a contractual relationship exists. The Court denies Officer Richter's motion for summary judgment for the reasons discussed below.

#### a.    No Qualified Immunity

Qualified immunity protects public officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis involves two considerations: "(1) whether facts alleged or shown by

---

[3] Officer Richter did not move for summary judgment on Plaintiff's claim Officer Richter racially discriminated against her in violation of the Fourteenth Amendment. *See* Richter's Mot. Summ. J. [#37]. Therefore, the Court does not examine this claim here.

plaintiff make out the violation of a constitutional right, and (2) if so, whether that right was clearly established at the time of the defendant's alleged misconduct." *Pasco v. Knoblauch*, 566 F.3d 572, 579 (5th Cir. 2009). Thus, the Court first examines whether Plaintiff has asserted a violation of a constitutional right and then considers whether that right was clearly established at the time of Officer Richter's alleged misconduct.

### i. Violation of a Constitutional Right

The Fourth Amendment confers a right to be free from excessive force during an arrest, investigatory stop, or other "seizure" of person. *Graham v. Connor*, 490 U.S. 386, 388 (1989). To establish a claim of excessive force under the Fourth Amendment, a plaintiff must show "(1) an injury (2) which resulted directly and only from the use of force that was clearly excessive to the need and (3) the force used was objectively unreasonable." *Cass v. City of Abilene*, 814 F.3d 721, 731 (5th Cir. 2016). Plaintiff claims she suffered severe bruising and abrasions, swelling in her wrists, and psychological injuries as a result of Officer Richter's use of force, and Officer Richter does not dispute the existence of a constitutionally cognizable injury for purposes of summary judgment. *See* Richter's Mot. Summ. J. [#37] at 7–15. The relevant inquiries, therefore, are whether Plaintiff's injury resulted from the use of clearly excessive and objectively unreasonable force. Under Fifth Circuit precedent, these inquiries are "often intertwined." *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

The Supreme Court has long recognized the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion of threat thereof to effect it. *Graham*, 490 U.S. at 396. Determining whether force is excessive or unreasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the

officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* Additional considerations that "may bear on the reasonableness or unreasonableness of the force used [include]: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2473 (2015).

Moreover, the "reasonableness" of a particular use of force is judged from the perspective of an officer at the scene, rather than the 20/20 vision of hindsight. *Graham*, 490 U.S. at 396. "Not every push or shove even if it may later seem unnecessary in the peace of a judge's chamber violated the Fourth Amendment." *Id.* (citation and internal quotation marks omitted). It is well-established that an officer may consider a suspect's refusal to comply with instructions in assessing whether physical force is needed to effectuate the suspect's compliance. *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (per curiam). In sum, excessive force claims are "necessarily fact-intensive" and whether the force used was excessive "depends on the facts and circumstances of each particular case." *Id.* (citation and quotation marks omitted).

Many facts of this case are in dispute. Under Plaintiff's version of the facts, in combination with the few undisputed facts, a reasonable jury could find Officer Richter's use of force was clearly excessive and objectively unreasonable. It is undisputed Plaintiff was stopped for a minor traffic violation, speeding. According to Plaintiff's account, there was no reason to believe her actions posed a threat to Officer Richter or the public.[4] Plaintiff denies ever saying "no" to any of Officer Richter's requests or refusing to place her feet in her vehicle. The only

---

[4] A factual dispute exists whether Plaintiff attempted to grab an item from underneath the passenger seat when Officer Richter ordered her to stand up and whether Plaintiff resisted Officer Richter. Compare Richter's Mot. Summ. J. [#37] at 3, *with* Resp. Richter's Mot. Summ. J. [#43] at 4.

contradictory evidence stems from Officer Richter's account of the interaction. Moreover, it is undisputed that once Plaintiff returned to her vehicle, she made no attempt to flee. Plaintiff's account suggests Officer Richter began using force in reaction to her question "Can you please hurry up?"

A reasonable jury could conclude a reasonable officer would have found any use of force unnecessary. Under the totality of the circumstances as alleged by Plaintiff—that is, a mid-day traffic stop where the suspect was a petite woman seated in her vehicle who was not attempting to flee or actively resist—an officer at the scene would have found pulling the woman from her vehicle, swinging her body around in the air so her legs collided with another vehicle, and slamming her to the ground to be objectively unreasonable. Thus, a fact issue exists on whether Officer Richter violated Plaintiff's constitutional right to be free from excessive force.

### ii. Clearly Established Right

The Court also concludes Plaintiff's constitutional right was clearly established at the time of Officer Richter's alleged misconduct. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Lytle v. Bexar Cty.*, 560 F.3d 404, 410 (5th Cir. 2009) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001) *overruled in part by Pearson v. Callahan*, 555 U.S. 223 (2009)). If officers of reasonable competence could differ on the lawfulness of defendant's actions, the defendant is entitled to qualified immunity. *See Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("Put simply, qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Though the Court views all facts in the light most favorable to Plaintiff, the burden

remains on Plaintiff "to negate the [qualified immunity] defense once properly raised." *See Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

At the time of the traffic stop at issue, it was clearly established law that "an officer violates the Fourth Amendment if he abruptly resorts to overwhelming physical force rather than continuing verbal negotiations with an individual who poses no immediate threat or flight risk, who engages in, at most, passive resistance, and whom the officer stopped for a minor traffic violation." *Hanks v. Rogers*, 853 F.3d 738, 747 (5th Cir. 2017) (finding this principle to be clearly established law for purposes of a traffic stop in 2013). Under Plaintiff's version of the facts, Officer Richter stopped Plaintiff for a minor traffic offense, Plaintiff was seated in her vehicle posing no immediate flight risk or threat, and she offered only passive resistance. A reasonable officer would have known abruptly resorting to overwhelming physical force rather than continuing verbal negotiations was unlawful in such a situation.

Genuine material fact issues preclude a determination of whether Officer Richter is entitled to qualified immunity on Plaintiff's excessive force claim. Viewing the facts in the light most favorable to Plaintiff, a reasonable jury could find Officer Richter violated Plaintiff's right to be free from excessive use of force, a right clearly established at the time of the traffic stop. Consequently, the Court denies Officer Richter's motion for summary judgment on his entitlement to qualified immunity concerning Plaintiff's excessive force allegation.

**b.    § 1981**

Officer Richter argues Plaintiff's racial discrimination claim under 42 U.S.C. § 1981 fails because she did not identify an impaired contractual relationship under which she has rights. Richter's Mot. Summ. J [#37] at 6–7. Officer Richter relies on *Domino's Pizza, Inc. v.*

*McDonald*, 546 U.S. 470, 476 (2006) in asserting § 1981 only applies in situations involving a contractual relationship. *Id.*

Officer Richter has not provided the Court with sufficient binding authority to merit judgment as a matter of law on Plaintiff's § 1981 claim. In particular, Officer Richter offers no authority from the United States Supreme Court or the Fifth Circuit demonstrating lack of a contractual relationship is fatal to Plaintiff's claim. Whether a contractual relationship is necessary condition for every claim under § 1981 is not well settled. *See Lozana v.* Ortega, No. EP-14-CV-239-KC, 2014 WL 6611595, at *7 (W.D. Tex. Nov. 19, 2014) (holding the plaintiff's § 1981 claims for racial discrimination against an officer failed without allegations the officer interfered with the plaintiff's contractual rights); *Garza v. U.S. Marshals Serv.*, No. CIV.A. B-07-052, 2008 WL 501292, *5 (S.D. Tex. Feb. 21, 2008) (finding only the plaintiff failed to allege his assault by officers was motivated by racial animus or the result of racially disparate treatment and not addressing the need for a contractual relationship); *Mazloum v. D.C. Metro Police Dep't*, 552 F. Supp. 2d 24, 37 (D.D.C. 2007) (concluding *Domino's* does not require a contractual relationship for every § 1981 claim). Furthermore, nothing in the record suggests trying Plaintiff's § 1981 claim would be prejudicial or would expand the scope of trial.[5] Therefore, the Court declines to grant summary judgment for Officer Richter on Plaintiff's § 1981 claim and will carry it to trial.

---

[5] Additionally, there is no indication § 1981 provides a remedy not available under Plaintiff's § 1983 claims.

## 2.    The City's Summary Judgment Motion

In *Monell v. Department of Social Services*, the Supreme Court held that a municipality cannot be held liable under § 1983 on a theory of *respondeat superior*. 436 U.S. 658, 691 (1978). Municipalities and other local governments may incur § 1983 liability, however, where official policy or custom causes a constitutional violation. *Bennet v. City of Slidell*, 728 F.2d 762, 766 (5th Cir. 1984). For municipal liability to attach, the plaintiff must prove three elements: (1) a policymaker; (2) an official policy; and (3) a "violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell*, 436 U.S. at 694). Official policy may be found in "written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009). When a policy is not facially unconstitutional, a plaintiff must demonstrate the municipality's adoption of the policy occurred with "deliberate indifference to the known or obvious fact . . . constitutional violations would result." *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quotation omitted).

Plaintiff claims the City is liable under § 1983 because it maintained inadequate hiring, training, and discipline policies causing Officer Richter's alleged excessive use of force and racial discrimination. Plaintiff also claims the City had an unwritten custom of racial discrimination.[6] Moving for summary judgment, the City argues Plaintiff has no evidence the City had inadequate hiring or training policies or a custom of racial discrimination. The City also

---

[6] Neither party addresses any § 1981 claim against the City in its summary judgment briefing. To extent Plaintiff makes any such claim, the Court does not address it here.

contends evidence demonstrates its disciplinary policies are not inadequate as a matter of law.[7] As described below, the Court grants in part and denies in part the City's motion for summary judgment.

### a. Hiring Policies

First, the Court agrees the City is entitled to summary judgment on Plaintiff's allegation the City maintained inadequate hiring policies. In responding to the City's motion for summary judgment, Plaintiff provided no evidence or argument supporting her claims the City had inadequate hiring policies. *See* Resp. City's Mot. Summ. J. [#44]. The Court does not find any evidence in the record suggesting the City's hiring policy was a moving force for the alleged violation of Plaintiff's rights. As conclusory allegations are insufficient to defeat a motion for summary judgment, the Court grants the City's motion for summary judgment concerning the City's hiring policies. *See Turner*, 476 F.3d at 343.

### b. Inadequate Training and Discipline Policies

Plaintiff presented sufficient evidence to raise a fact issue on the City's liability under § 1983 for inadequate remedial training and discipline policies. To prevail on an inadequate training or discipline claim, a plaintiff must prove (1) the municipality's training or discipline policy was inadequate; (2) the inadequate training or discipline policy was a moving force in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy or discipline policy. *See Valle v. City of Hous.*, 613 F.3d 536, 544 (5th Cir. 2010).

---

[7] The City does not argue Plaintiff has insufficient evidence of the underlying violations of her constitutional rights to be free of excessive force and racial discrimination. *See* City's Mot. Summ. J. [#39]. Therefore, the Court assumes Plaintiff can establish these violations in evaluating the City's motion for summary judgment.

To show the City's training or discipline policies were inadequate Plaintiff presented video evidence Officer Richter repeatedly used arguably excessive force. *See* June 30, 2013 Incident Video; August 19, 2012 Incident Video; November 19, 2011 Incident Video. The racial identities of the individuals Officer Richter previously used force against remain unclear. *Id.* A reasonable jury could find Officer Richter was involved in several incidents where he used arguably excessive force, which could be interpreted as a pattern of excessively using force, potentially against racial minorities. *See Piotrowski v. City of Houston*, 237 F.3d 567, 582 (5th Cir. 2001) ("A pattern could evidence not only the existence of a policy but also official deliberate indifference."). But Officer Richter was not provided any remedial training or discipline. Richter Dep. at 54:13–57:19. Plaintiff's evidence is sufficient for a reasonable jury to find the City did not provide remedial training or discipline where an officer struggled with when and to what degree to use force and therefore that the City's training and discipline policies were inadequate.

Plaintiff also raises a factual question on whether the failure to provide Officer Richter additional training or discipline was the moving force for Plaintiff's injuries. Plaintiff's evidence suggests Officer Richter's prior uses of force were of a similar type as Plaintiff alleges occurred here. It is reasonable to conclude "the highly predictable consequence" of not disciplining or training officers following the questionable use of force "was that they would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009) (quotation omitted). Plaintiff's evidence is sufficient to establish that the City's inadequate training and discipline policies were the moving force for the violation of Plaintiff's rights.

Additionally, a material fact issue exists on whether the City was deliberately indifferent in adopting and applying its training and discipline policies. To show deliberate indifference, a plaintiff may either (1) show that the municipality had notice of a pattern of similar violations; or (2) demonstrate that the need for more or different training was obvious based on a single incident. *Kitchen v. Dall. Cty., Tex.*, 759 F.3d 468, 484 (5th Cir. 2014), *abrogated on other grounds, Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2472–73 (2015). Here, Plaintiff offers evidence the City had notice of a pattern of similar violations where Officer Richter questionably used force. *See* Richter's Internal Affairs File at 13–14; Richter Dep. at 54:13–57:19 (noting Officer Richter received comments from his supervisors indicating they wished he would do things differently). But the City failed to provide Officer Richter any supplementary training or discipline. Richter Dep. at 54:13–57:19. Thus, Plaintiff provides enough evidence to create a fact issue on deliberate indifference.

In sum, the Court denies the City's motion for summary judgment concerning the City's § 1983 liability for its remedial training and discipline policies because there is sufficient evidence to support a reasonable verdict in favor of Plaintiff. However, to be clear, the question for trial is limited to whether the City's policies on supplemental training and discipline in light of Officer Richter's repeated uses of arguably excessive force were inadequate and caused Plaintiff's alleged constitutional injuries. The jury will review Officer Richter's prior uses of force and evaluate (1) whether the City's remedial training and discipline policies were inadequate, (2) whether such policies caused Plaintiff's alleged constitutional violations, and (3) whether the City was deliberately indifferent in adopting such policies.

### c.    180-Day Rule

Plaintiff also asserts the City's application of Texas's 180-Day Rule was a moving force for the violation of Plaintiff's rights. However, at most, Plaintiff shows the City's application of 180-Day Rule caused Officer Richter to be inadequately disciplined for his treatment of Plaintiff. *See* Resp. City's Mot. Summ. J. [#44] at 16. There is no evidence the 180-Day Rule was implicated in attempted discipline surrounding prior uses of force. Plaintiff makes no showing the City's prior application of the 180-Day Rule was the moving force for or had any role in causing the alleged violation of Plaintiff's constitutional rights. *Id.* Thus, the Court grants the City's motion for summary judgment regarding the City's application of Texas's 180-Day Rule.

### d.    Ratification

In responding to the City's motion for summary judgment, Plaintiff argues the City "ratified [Officer] Richter's conduct by failing to adequately discipline him in this case." Resp. City's Mot. Summ. J. [#44] at 13–14.

Under a ratification theory, a plaintiff may show an official custom or policy where policymakers ratified the alleged violation of the plaintiff's constitutional rights by failing to discipline those involved. *Fuentes v. Nueces Cty., Tex.*, 689 F. App'x 775, 779 (5th Cir. 2017). But the Fifth Circuit has limited ratification to cases where the underlying incident is an "extreme factual situation" of the type reflected in *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir. 1985). *Id.* (alteration omitted). In *Grandstaff,* officers mistook an innocent bystander for a minor traffic violation suspect and "poured their gunfire at the truck without awaiting any hostile act or sounds, ultimately killing the bystander." *Id.* (quoting *Grandstaff*, 767 F.2d at 165, 168 (internal quotation marks omitted)). The *Grandstaff* court held the conduct of the officers involved in the incident and the failure to discipline or discharge any of those

officers was sufficient to infer a de facto policy of reckless disregard for human life. *Id.* (citing *Grandstaff*, 767 F.2d at 171–72).

The traffic stop in this case does not present an extreme factual situation from which a reasonable jury is entitled to infer the City had a policy of condoning constitutional rights violations. *See Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 848 (5th Cir. 2009) (finding ratification liability foreclosed where officers dragged a non-resisting plaintiff out of a vehicle, slammed him into the ground and into his vehicle, cuffed him, and beat him while he was in cuffs). Thus, the Court grants the City's motion for summary judgment on Plaintiff's allegation of ratification.

### e. Custom of Racial Discrimination

Finally, Plaintiff raises a fact issue on whether the City had a custom of racial discrimination—especially in using force—that was the moving force for her alleged constitutional violations.

In a single paragraph in its motion for summary judgment, the City argues Plaintiff has no evidence of a custom of racial discrimination and cites APD's policy prohibiting racial profiling. *See* City's Mot. Summ. J. [#39] at 14–15. In response, Plaintiff offers the following evidence to support her allegation: (1) video of her interaction with Officer Richter, Richter Dash Camera Video at 1:21–4:20; (2) Officer Spradlin's comments suggesting officers perceive black people as having "violent tendencies," Spradlin Seat Camera Video at 49:16–50:11; (3) Chief Acevedo's comments suggesting racial animus motivated Officer Richter's use of force against Plaintiff, Acevedo Radio Interview at 10; and (4) a Center for Policing Equity Report analyzing APD data and finding APD officers disproportionately used force and more severe force against blacks in 2014, Resp. City's Mot. Summ. J. [#44-7] Ex. G (CPE Report) at 11–14. In reply, the

City merely categorized Plaintiff's evidence as "circumstantial" and asserted such evidence was insufficient to support Plaintiff's custom of racial discrimination claim. Reply [#46] at 8–9. The City cites no authority for its assertion. *Id.*

The City has not shown it is entitled to judgment as a matter of law. Plaintiff has provided sufficient evidence to substantiate her claim the City is liable under § 1983 for maintaining a custom of racial discrimination. The Court therefore denies summary judgment on this claim.

### Conclusion

In sum, the Court denies Officer Richter's motion for summary judgment. Fact issues prevent a determination of whether Officer Richter is entitled to qualified immunity on Plaintiff's excessive force claim. Viewing all facts in the light most favorable to Plaintiff, the Court finds Plaintiff can show Officer Richter violated her right to be free of excessive force, a right clearly established at the time of Officer Richter's alleged misconduct. The Court also declines to grant summary judgment for Officer Richter on Plaintiff's § 1981 claim and will carry it to trial.

Furthermore, the Court grants in part and denies in part the City's motion for summary judgment. The City is entitled to judgment as a matter of law on Plaintiff's claims the City is liable under § 1983 for its hiring policies, application of the 180-Day Rule, and ratification of Officer Richter's treatment of Plaintiff. However, Plaintiff provided sufficient evidence to hold the City liable under § 1983 for inadequate training and discipline policies as well as a custom of racial discrimination.

Accordingly,

IT IS THEREFORE ORDERED that Defendant Brian Richter's Motion to Exclude the Expert Testimony of Kevin Cokley [#36] is DISMISSED without prejudice to re-urging at trial;

IT IS FURTHER ORDERED that Officer Bryan Richter's Motion for Summary Judgment [#37] is DENIED; and

IT IS FINALLY ORDERED that the City of Austin Motion for Summary Judgment [#39] is GRANTED IN PART and DENIED IN PART as described in this opinion.

SIGNED this the ___1st___ day of May 2018.

_Sam Sparks_
SAM SPARKS
SENIOR UNITED STATES DISTRICT JUDGE